**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

ERIC LAMAR HOLIFIELD, AIS 197006, :

     Petitioner,                    :

vs.                               :       CA 18-0026-WS-MU

WARDEN CYNTHIA STEWART,      :

     Respondent.

## REPORT AND RECOMMENDATION

Eric Lamar Holifield, a state prisoner presently in the custody of the respondent, has petitioned this Court for federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Petitioner challenges the validity of his February 24, 2015 first-degree rape, first-degree sodomy (2 counts), and second-degree kidnapping convictions in the Circuit Court of Mobile County, Alabama. On April 16, 2015, the Circuit Court sentenced Petitioner for those convictions to consecutive life terms of imprisonment on the rape and sodomy counts, with a 15-year sentence on the kidnapping conviction to run concurrent to the rape sentence. The Alabama Court of Criminal Appeals affirmed Holifield's convictions and sentences by unpublished memorandum opinion issued on February 5, 2016. *See Holifield v. State,* 225 So.3d 136 (Ala.Crim.App. 2016) (table). Holifield's application for rehearing was denied on February 26, 2016, *id.*; however, Holifield did not petition the Alabama Supreme Court for writ of certiorari and, as a result, the Alabama Court of Criminal Appeals issued a certificate of final judgment of affirmance on March 16, 2016 (*see* Doc. 8, Exhibit 8). Holifield filed a Rule 32 petition in the Circuit Court of Mobile

County, Alabama collaterally attacking his convictions and sentences on July 15, 2016. (Doc. 8, Exhibit 10, February 16, 2017 ORDER, at 1). The trial court summarily denied Holifield's collateral petition without an evidentiary hearing. (*See id*.). The Alabama Court of Criminal Appeals affirmed the trial court's judgment by unpublished memorandum decision issued on August 11, 2017. (Doc. 8, Exhibit 14). Petitioner's application for rehearing was overruled on September 1, 2017. (Doc. 8, Exhibit 16). Holifield's petition for writ of certiorari to the Alabama Supreme Court was denied without opinion on November 9, 2017 (Doc. 8, Exhibit 18), and the certificate of final judgment issued that same date (Doc. 8, Exhibit 19).

In his petition before this Court, filed January 18, 2018 (Doc. 1, at 13), Holifield raises the following issues which he claims entitle him to federal habeas corpus relief: (1) the trial court committed reversible error in refusing his request for a jury instruction on the lesser-included offense of third-degree assault; (2) his trial counsel provided ineffective assistance;[1] (3) his appellate counsel provided ineffective assistance;[2] and

---

[1]     Petitioner contends that his trial attorney provided ineffective assistance in: (a) identifying a deaf juror as someone who could possibly be challenged for cause and not objecting to the trial court striking this particular juror for cause; (b) failing to utilize § 12-16-150(a)(4) of the Alabama Code to remove for cause a potential juror who was a putative relative of the District Attorney; (c) failing to seek a mistrial based on the Assistant District Attorney communicating with a potential juror outside the presence of the court and the defendant; and (d) failing to object to the trial court's failure to charge the jury that "their verdict must be independent as to each individual charge[]." (Doc. 1, at 19-26).

[2]     Petitioner contends that his appellate attorney provided ineffective assistance because he failed to raise on appeal the following issues: (1) the trial court allowing, over objection, the arresting officer to testify about a prejudicial statement made by Holifield during the arrest; (2) the trial court granting, over objection, the State's motion precluding evidence of the victim's prior sexual history; (3) the trial court's refusal to allow Holifield to recall witnesses; and (4) the trial court allowing, over objection, the SANE nurse to testify as an expert. (*See* Doc. 1, at 26-28).

(4) the trial court was without jurisdiction to render judgment or impose sentence, his convictions being void *ab initio* and repugnant to the United States Constitution because the Alabama Constitution of 1901 was enacted with the sole intent to establish white supremacy and to disenfranchise blacks and poor whites. Respondent contends that this Court is procedurally barred from reaching the merits of Holifield's first claim (that is, the lesser-included jury instruction contention); that Petitioner has failed to establish, with respect to his ineffective assistance of counsel claims, that the decisions of the state courts (primarily that of the trial court) were contrary to or involved an unreasonable application of *Strickland v. Washington* or that these decisions were based on an unreasonable determination of the facts in light of the evidence presented in state court; and that Petitioner's final claim has no basis. (*See* Doc. 8, at 5-16.)

This cause is before the Court on the petition (Doc. 1), Respondent's answer with attachments (*see* Doc. 8), and Petitioner's response (Doc. 10) to the undersigned's April 18, 2018 show cause order (Doc. 9). A full, thorough review of the record has been completed and it is determined that it contains sufficient facts upon which the issues under consideration may be properly resolved. Therefore, no evidentiary hearing is required. *Compare Means v. Secretary, Department of Corrections,* 433 Fed.Appx. 852, 855 (11th Cir. July 12, 2011) ("[W]here 'the record refutes [a petitioner's] factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.'") (citation omitted)), *cert. denied,* 565 U.S. 1217, 132 S.Ct. 1580, 182 L.Ed.2d 198 (2012) *with Allen v. Secretary, Florida Dep't of Corrections,* 611 F.3d 740, 745 (11th Cir. 2010) ("A district court is not required to hold an evidentiary hearing if the claims 'are merely conclusory allegations unsupported by specifics,' . . . or

'if the record refutes the applicant's factual allegations or otherwise precludes habeas relief[.]'"), *cert. denied,* 563 U.S. 976, 131 S.Ct. 2898, 179 L.Ed.2d 1192 (2011).

## **FACTUAL BACKGROUND**

During the late evening hours of April 12, 2013, and the early morning hours of April 13, 2013, Ashley Nathan and a friend, Joy Robinson, went out drinking and socializing, stopping first at Breaker's Pool Hall, until that establishment closed at 1:00 a.m., before moving to Suga's Club. (*Compare* Doc. 8, Exhibit 2, T.T. 115-19 *with* T.T. 140-44). At Suga's, Nathan met a guy named "Gater" with whom she began talking and dancing. (T.T. 144-45; *see also id.* at 119). According to Nathan, Gater asked the two girls if they wanted to get something to eat after the club closed and that the three made plans to go to Denny's. (*Id.* at 145-46). The plan, however, was not to ride to Denny's together; instead, the girls agreed to take Gater to get his truck before heading to the restaurant (*id.* at 147), after first stopping for gas (*see id.* at 142). When they arrived outside the house where Gater's SUV was parked, Robinson's phone rang and she thereafter informed Nathan that she had to leave to pick up her child from the sitter; Nathan was given the option to leave with Robinson or stay with Gater. Nathan chose to stay and go to breakfast at Denny's with Gater. (*Id.* at 148). After Robinson left, Gater told Nathan that he had to go inside the house to retrieve his wallet and that he did not want her standing outside alone in the dark and cold. (*See id.* at 149). Once inside, the pair went to the room in which Gater was living and, once in the room, Gater closed and locked the door and, ultimately, raped and sodomized Nathan, first at knifepoint and

then at gunpoint.[3] (*See id.* at 149-67)[4].

When Nathan emerged from Gater's room and house, it was daylight. (*Id.* at 168). She ran down the street and was admitted to the second house at which she knocked (*see id.* at 169), the home Sharon Howard Webb shared with her husband (*see id.* at 132-33). Webb testified that Nathan was crying, appeared to be a nervous wreck, and was carrying her shoes in one of her hands. Once Webb supplied Nathan with a blanket, she asked her what had happened and upon being informed by Nathan that she was raped, Webb called the police. (*Id.* at 133-34).

Officer Jonathan Rabeau spoke to a distraught and crying Nathan, after which the responding officers moved to the address of the incident and arrested Eric Holifield,[5] advising him that he was being arrested on a charge of rape. (*See id.* at 203-08; *see also* T.T. 220 (Rabeau's in-court identification of the defendant as the man he arrested on the morning of April 13, 2013)). The officers seized three knives in plain view on the nightstand, found Nathan's pink wallet with her identification under Holifield's mattress, and (for officer safety) asked Holifield about the location of the gun utilized during the course of the incident. (*Id.* at 207-08). Holifield advised the officers that he did not have a gun and had not raped anyone, though he admitted being with a girl. (*Id.* at 209). A gun was found in a hole in a wall in the room and given the darkness of the room, along

---

[3]    Nathan identified Eric Holifield in court as being her assailant, that is, "Gater." (*See id.* at 180).

[4]    Nathan testified that "Gater" also told her that he had her identification and address and that he would kill her and her family if she called the police. (*Id.* at 167).

[5]    A brief struggle occurred before the officers were able to secure the cuffs on Holifield. (*Id.* at 206.)

with the fact that the gun was black with silver camouflage markings, the officers were only able to determine that the gun was a toy after it had been removed from the hole in the wall and inspected. (*See id.* at 212-15; *see also* T.T. 354 (Holifield's testimony that the gun was a cap gun)). According to Rabeau, as he was transporting Holifield to jail, Holifield commented to the officer that he was not worried about the case since the officer (Rabeau) would never make it to court to testify against him. (*See id.* at 218)[6].

Arlene Kays, a Sexual Assault Nurse Examiner ("SANE") for Mobile County, interviewed Nathan and performed a rape kit examination of the victim at around 11:00 a.m. on April 13, 2013, at USA Children's and Women's Hospital. (*Compare id.* at 245 & 255-71 *with id.* at 173 (Nathan's testimony that she was taken by ambulance to Children's & Women's Hospital)). Kays recorded her interview with Nathan (*see id.* at 259-260), a recording which is largely consistent with Nathan's trial testimony (*compare id. with id.* at 143-67), and then examined Nathan, during which she took vaginal, anal and oral swabs (*id.* at 266; *see also id.* at 263-71). Kays testified as an expert, over defense counsel's objection and exception (*see id.* at 240-45 & 249-50), in particular stating that everything she observed during her physical examination of Nathan was consistent with the victim's report of a sexual assault (*id.* at 270).

Mike Morgan, the Chief Investigator for the Mobile County District Attorney's Office, obtained Holifield's DNA, by buccal swab of each cheek, on September 23, 2014. (*Id.* at 278-80). And Joseph Lee, a forensic scientist in the DNA section of the Alabama Department of Forensic Sciences, testified that the semen on the vaginal

---

[6]     This testimony was allowed over Holifield's objection. (*See id.* at

swabs taken from Nathan matched Holifield's DNA. (*See id.* at 284, 289-94 & 296-97).

Defense counsel for Holifield offered a robust defense of his client as he attempted to cast more doubt on Nathan's account of the sexual encounter and the District Attorney's theory of the case, that is, more than could be established through cross-examination of the State's witnesses,[7] through the testimony of five defense witnesses (*see* T.T. 302-67), including the defendant himself (T.T. 330-60). Eric Holifield admitted that he and Nathan engaged in sexual activities on the morning of April 13, 2013 but testified that all sexual activity was consensual. (*See id.* at 342 & 344). Indeed, it was Holifield's trial testimony that Nathan aggressively pursued him at Suga's (*id.* at 331-32 (Nathan grabbed him by an armed, pulled him in a chair, and began dancing on his lap)), and that when they reached his mother's house, Nathan informed him in no uncertain terms that they were going to have sexual intercourse (*see id.* at 338-39).

The trial court charged the jury on the elements of first-degree rape, first-degree sodomy, first-degree kidnapping and the lesser-included offense of second-degree kidnapping (*see* T.T. 418-24) but refused to charge the jury on third-degree assault, as a lesser-included offense of first-degree sodomy (*see id.* at 376-79).

On February 24, 2015, a jury of Holifield's peers found him guilty of one-count of first-degree rape, two counts of first-degree sodomy, and the lesser-included offense of second-degree kidnapping. (T.T. 438-39). On April 16, 2015, Holifield was sentenced to a 15-year term of imprisonment for second-degree kidnapping, to run concurrent with a

---

[7]     There can be little question but that trial counsel thoroughly cross-examined each state witness, save for the forensic expert. (*See* T.T. 124-29, 135-36, 182-95, 221-37, 271-76 & 282).

term of life on the rape case, and then a term of life for sodomy, to run consecutive to the rape sentence. (*Compare* Doc. 8, Exhibit 2, Sentencing Transcript, at 14-15 *with* Doc. 8, Exhibit 5, at 2 n.2 ("It is clear from the sentencing orders that the sodomy charge was ordered to run consecutively with the rape and kidnapping charges.")). Thereafter, Holifield entered oral notice of appeal. (Doc. 8, Exhibit 2, Sentencing Tr., at 15).

On appeal, Holifield raised one issue, namely, that the trial court committed reversible error in refusing his request for a jury instruction on the lesser-included offense of third-degree assault. (*See* Doc. 8, Exhibit 3, at 6.) In affirming Holifield's convictions and sentences by unpublished memorandum opinion, the Alabama Court of Criminal Appeals addressed his jury-instruction issue, in relevant manner, as follows:

> On appeal, Holifield's sole argument is that the circuit court erred by refusing his request for a jury instruction on third-degree assault as a lesser-included offense of sodomy.[8] Specifically, Holifield argues that "there is clear evidence that the victim sustained superficial injuries sufficient to satisfy the definition of Assault, Third Degree, even if Holifield's consent defense was believed." (Holifield's brief, p. 17.)
>
> Initially, we question whether Holifield's brief on appeal satisfies Rule 28(a)(10), Ala.R.App.P. Holifield cites one case that does not support his argument on appeal. "[W]e are not required to consider matters on appeal unless they are presented and argued in brief with citations to relevant legal authority." Zasadil v. City of Montgomery, 594 So.2d 231, 231 (Ala.Crim.App. 1991). Therefore, Holifield's claim is not properly before this Court.
>
> Even so, Holifield is not entitled to relief on this claim. In Powell v. State, 644 So.2d 1279, 1280-81 (Ala.Crim.App. 1994), the defendant appealed his convicitons for first-degree rape and first-degree sodomy. In

---

[8] "As noted above, Holifield requested a charge of third-degree assault as a lesser-included offense of first-degree sodomy for recklessly causing physical injury to the victim; therefore, we consider only that argument on appeal." (Doc. 8, Exhibit 5, at 6 n.5).

affirming those conviction, this Court held:

> The appellant's only contention on appeal is that the trial court erred in failing to instruct the jury on the lesser included offenses of assault in the third degree, menacing, and harassment.
>
> Here, no instructions on lesser included offenses were necessary. The appellant admitted that he had sexual intercourse with M.N. Thus he was either guilty of the offense or not guilty of anything. Instructions on any lesser included offenses were not consistent with the appellant's defense.
>
> We find it unnecessary to address the issue of whether assault in the third degree, menacing, and harassment are or can be lesser included offenses of rape in the first degree or of sodomy in the first degree. For purposes of a case such as this, where the act of intercourse is admitted, either there was consent or there was not.

Further,

> As Judge Brown stated in <u>Ingram v. State</u>, 570 So.2d 835 (Ala.Crim.App. 1990):
>
>> In determining whether one offense is a lesser included offense of the charged offense, the potential relationship of the two offenses must be considered not only in the abstract terms of the defining statutes but must also be considered in light of the particular facts of each case.
>>
>> Whether a crime is a lesser offense of another crime is necessarily decided on a case-by-case basis. A lesser offense is necessarily included in the elements of the greater offense and therefore it would be impossible to commit a greater offense without committing the included offense. Section 13A-1-9(a)(1), Code of Alabama 1975, defines an included offense as an offense that is established by proof of

> the same or fewer than all the facts required to
> establish the commission of the offense
> charged.
>
> Thus under these facts, the trial court committed no
> error in refusing to instruct the jury on third degree assault,
> menacing, or harassment.
>
> Here, like in <u>Powell</u>, Holifield admitted to having oral and anal sex
> with A.N. Because Holifield was either guilty of the offense or not guilty of
> anything, a lesser-included instruction was not warranted in this case.
> <u>Powell</u>, <u>supra</u>. Furthermore, in light of these facts and circumstances, the
> circuit court did not abuse its discretion in refusing the requested
> instruction.
>
> Based on the foregoing, the judgment of the circuit court is
> affirmed.

(Doc. 8, Exhibit 5, at 6-9 (internal quotations marks and citations from the *Powell* case

omitted)). Holifield's application for rehearing was overruled on February 26, 2016 (Doc.

8, Exhibit 7) but because he did not petition the Alabama Supreme Court for writ of

certiorari, the Alabama Court of Criminal Appeals issued a certificate of final judgment

of affirmance on March 16, 2016 (Doc. 8, Exhibit 8).

Holifield filed a Rule 32 petition in the Circuit Court of Mobile County, Alabama

collaterally attacking his convictions and sentences on July 15, 2016. (*See* Doc. 8,

Exhibit 10, ORDER, at 1.) In his Rule 32 petition, Holifield raised the same claims he

raises in the instant habeas corpus petition, save that he did not raise the jury

instruction argument he made on direct appeal and now also raises in the pleading filed

in this Court. (*Compare id.* at 2-9 *with* Doc. 1). By order dated February 16, 2017, the

trial court summarily denied Holifield's Rule 32 petition without holding an evidentiary

hearing (Doc. 8, Exhibit 10, ORDER):

## I.    Ineffective Assistance of Trial Counsel

To prevail on a claim of ineffective assistance of counsel, Petitioner must satisfy the two-pronged analysis established in *Strickland v. Washington*, 466 U.S. 668 (1984). Petitioner first must identify specific acts or omissions that he alleges were not the result of reasonable professional judgment on counsel's part and show that the acts or omissions fall "outside the wide range of professionally competent assistance." *Id.* at 690. A bare allegation that prejudice occurred without specific facts indicating how the petitioner was prejudiced is not sufficient.[] *Hyde v. State,* 950 So.2d 344, 355 (Ala.Crim.App. 2006). If Petitioner can meet this burden, he must then show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." [*Strickland v. Washington*, *supra,* 466 U.S.] at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

When reviewing a postconviction claim for relief based on ineffective assistance of counsel, a court must indulge a strong presumption that [] counsel's conduct falls within a wide range of reasonable professional assistance. *See Strickland,* 466 U.S. at 689. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. There is a strong presumption that trial counsel's conduct falls within a wide range of professional assistance. *Hunt v. State,* 940 So.2d 1041, 1059 (Ala.Crim.App. 2005). This presumption is similar to the presumption of innocence in a criminal trial. *Id.* Here, Holifield makes various assertions about why his trial and appellate counsel were constitutionally ineffective.

### A.    Failure to object to the Court striking a deaf juror for cause.

The Petitioner contends that his counsel should have objected to the Court striking a juror with severely-impaired hearing, arguing that he was prejudiced because the jury pool did not represent the physically disabled citizens of Mobile County. However, as the State points out in its response, which is borne out by the portion of the record cited by the Petitioner, the struck juror was afflicted with such poor hearing as to be unqualified under law to perform jury service. See Ala. Code § 12-16-60(a) (Rep. 2015). Petitioner's counsel acted properly in identifying an unqualified juror, who was then properly struck from the venire by the

Court. Accordingly, this claim is wholly without merit and due to be summarily dismissed. R.32.7(d).

### B.     Failure to challenge a potential juror for cause.

The Petitioner contends his counsel should have challenged for cause potential juror Kristen Jordan who is related to the Mobile County District Attorney, Ashley Rich. The Petitioner cites Ala. Code § 12-16-150(a)(4) which states: "It is good ground for challenge of a juror by either party: . . . (4) That he is connected by consanguinity within the ninth degree, or by affinity within the fifth degree . . . with the prosecutor or the person alleged to be injured." However, Petitioner misinterprets § 12-16-150(a)(4).

> It is not ground for challenge for cause that a juror is related to counsel in a criminal case. *Washington v. State,* 58 Ala. 355 (1877). That a juror is related to the district attorney or to the prosecuting attorney is no ground for challenge for cause. *Frost v. State,* 225 Ala. 232, 142 So. 427 (1932). As used in Alabama Code 1975, Section 12-16-150, "prosecutor" means "one who instigates prosecution by making an affidavit charging a named person with the commission of a penal offense, on which a warrant is issued, or an indictment or accusation is based," *Wright v. State,* 40 Ala.App. 263, 269, 111 So.2d 588, cert. denied, 269 Ala. 131, 111 So.2d 596 (1958). "Prosecutor" as used in the statute containing the statutory challenges for cause does not mean the district attorney prosecuting the accused. *Acoff v. State,* 50 Ala.App. 206, 278 So.2d 210 (1973).

*Howard v. State,* 420 So.2d 828, 831 (Ala.Crim.App. 1982). Accordingly, there was no proper basis for Holifield's counsel to challenge this juror for cause. *Hooks v. State,* 21 So.3d 772, 785 (Ala. 2008) ("An attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.") (quoting *United States v. Kimler,* 167 F.3d 889, 893 (5th Cir. 1999)). This claim is due to be dismissed under Ala.R.Crim.P. 32.7(d).

### C.     Failure to move for a mistrial due to alleged private contact between the prosecutor and a potential juror.

Petitioner speculates that the attorney prosecuting his cases had private contact with a potential juror because the assistant prosecutor informed the Court that said potential juror was related to the District

Attorney. Petitioner argues that his counsel should have divined this "fact" and moved for a mistrial and, failing to do so was ineffective. As pled, this claim is nonsense, and Petitioner fails to raise a material issue of law or <u>fact</u> that would entitle him to relief. Therefore, this claim is due to be dismissed under Ala.R.Crim.P. 32.7(d).

### D. <u>Failure to request jury charge</u>.

Petitioner contends that the Court failed to instruct the jury to consider the charges against him independently of each other. He asserts that his counsel failed to object to that error and failed to request the Court to properly charge the jury, arguing that his counsel's error allowed the jury to find him guilty of one charge based on the evidence of another charge. As the State points out in its response, the Court instructed the jury on the elements of each offense separately, each time instructing the jury that they could not return a guilty verdict unless the State proved beyond a reasonable doubt all of the elements of the offense. The Court also made it clear in its instructions concerning the verdict forms that the jury was to consider each offense separately. Accordingly, this claim is directly refuted by the record and due to be dismissed under Ala.R.Crim.P. 32.7(d).

### II. Ineffective Assistance of Appellate Counsel

The Petitioner alleges that he was denied the effective assistance of appellate counsel because only one issued was raised for review in his direct appeal. The Petitioner contends that appellate counsel should have raised the following additional issues on direct appeal: the introduction, over his objection, of his prejudicial statement to law enforcement at the time of his arrest; the exclusion of evidence concerning the victim's prior sexual history; the denial of his request to recall witnesses; and the denial of his objection to the S.A.N.E. nurse testifying as an expert.

The Petitioner pleads in conclusory fashion that he was prejudiced by appellate counsel's failure to raise these issues, and that there is a reasonable probability that the result of his appeal would have been different. However, Petitioner fails to disclose a factual or legal basis to satisfy his burden of pleading under Ala.R.Crim.P. 32.3 and 32.6(b).

"The admissibility of . . . evidence is within the discretion of the trial court, and the court's ruling will not be reversed absent an abuse of that discretion." *Taylor v. Gen. Motors Corp.,* 707 So.2d 198, 203 (Ala. 1997). Petitioner has not alleged the Court abused its discretion in any of these instances. He merely points out that objections were made at trial and those objections were not asked to be reviewed on appeal. He has offered

no facts from which to conclude that there is a substantial likelihood that the appellate court would rule differently than this Court.

"The process of evaluating a case and selecting those issues on which the appellant is most likely to prevail has been described as the hallmark of effective appellate advocacy." *Hamm v. State,* 913 So.2d 460, 491 (Ala.Crim.App. 2002). Appellate counsel has no obligation to raise every non-frivolous issue. *Jones v. Barnes,* 463 U.S. 745 (1983).

The United States Supreme Court has recognized that '[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.' *Jones v. Barnes,* 463 U.S. at 751-52, 103 S.Ct. 3308. Such a winnowing process 'far from being evidence of incompetence, is the hallmark of effective advocacy.' *Smith v. Murray,* 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986). Appellate counsel is presumed to exercise sound strategy in the selection of issues most likely to afford relief on appeal. *Pruett v. Thompson,* 996 F.2d 1560, 1568 (4th Cir. 1993), cert. denied, 510 U.S. 984, 114 S.Ct. 487, 126 L.Ed.2d 437 (1993).

*Clark v. State,* 196 So.3d 285, 302-03 (Ala.Crim.App. 2015).

[W]e emphasize that the right to effective assistance of appellate counsel does not require an attorney to advance every conceivable argument on appeal which the trial record supports. . . . [E]xperienced advocates have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues. Selecting the most promising issues for review has assumed a greater importance in an era when the time for oral argument is strictly limited in most courts and when page limits on briefs are widely imposed. . . .

*Hooks v. State,* 21 So.3d 772, 793 (Ala.Crim.App. 2008).

The Petitioner has failed to plead this claim with the required specificity and he has failed to raise a material issue of law or fact that would entitle him to relief. As a result, this claim is due to be dismissed under Ala.R.Crim.P. 32.7(d).

### III. Lack of Jurisdiction to Support Conviction or Sentence.

Petitioner asserts that because the 1901 Alabama Constitution was enacted with discriminatory intent, the entire Alabama Criminal Code is null and void and cannot support his or any other conviction. He relies on *Hunter v. Underwood,* 471 U.S. 222 (1985), in which the United States Supreme Court struck down a disenfranchising provision of the Alabama Constitution based in part on the racial animus underlying the adoption of the 1901 Alabama Constitution. However, the court in *Hunter* did not strike down the entire 1901 Alabama Constitution, and the Petitioner fails to demonstrate that the statutes under which he was convicted and sentenced are constitutionally infirm facially or as applied.

It is not enough to show discriminatory intent in the drafting of the Alabama Constitution; it must also be shown that but for the discriminatory intent the complained of action would not have been taken. *Underwood v. Hunter,* 730 F.2d 614, 617 (11th Cir. 1984), aff'd, 471 U.S. 222, 105 S.Ct. 1916, 85 L.Ed.2d 222 (1985) . . . . Thus, Petitioner would have to show that but for discriminatory intent the State of Alabama would not have adopted statutes criminalizing rape, sodomy, and kidnapping. Petitioner has not made, and could not make, such a showing as the State aptly demonstrated in its response:

Perhaps the oldest record of a jury trial in Europe evolved from a rape. Ares caught one of Poseidon's sons in the act of raping his daughter. Ares killed the rapist on the spot. Poseidon insisted that Ares be tried for the murder of his son. The trial took place at what became known as the Areopagus in Athens. A jury of twelve acquitted Ares of murder. That jury in ancient Athens believed rape was so abhorrent that Ares was justified in killing the perpetrator. The evil of rape was recognized in our legal traditions long before the adoption of the current state constitution. The Petitioner has showed no facts from which to conclude that discrimination was a motivating factor in the adoption of the State's laws criminalizing rape.

Long before the story of Lot fleeing Sodom with his family was written down between the 10th and 6th century B.C. forcible sodomy was viewed as evil. Genesis 19. Our name for the act comes from this story. The Petitioner has offered no facts from which to conclude that discrimination

was a motivating factor in the adoption of the State's laws criminalizing sodomy.

Kidnapping was a capital offense in the Old Testament. Exodus 21:16, Deuteronomy 24:7. It is blamed for the enmity between ancient Greece and Asia. First the Phoenicians kidnapped Io from Argos in Greece. The Greeks then kidnapped Europa from the Phoenicians at Tyre. Next, the King of Colchis' daughter, Medea[,] was kidnapped by Greeks from Argos. "[S]ome forty or fifty years afterwards Paris, the son of Priam, was inspired by these stories to steal a wife for himself out of Greece . . . . And that was how he came to carry of[f] Helen." The kidnapping of Helen "launch'd a thousand ships/And burnt the topless towers of Illium." A decade of warfare and the destruction of an empire followed the kidnapping.

Three millennia later we may no longer go to war, but society is no less offended and repulsed by the act; thus[,] the criminalization of kidnapping. The Petitioner has offered no facts from which to conclude that discrimination was a motivating factor in the adoption of the State's [] penal laws regarding kidnapping.

[State's response, pp. 9-10.]

In any event, this claim by Petitioner is subject to procedural bars, as it is a nonjurisdictional ground. See *Dowdell v. State,* 854 So.2d 1195, 1196 (Ala.Crim.App. 2002) (Rule 32 claim alleging the unconstitutionally of the 1901 Alabama Constitution based upon racial animus is nonjurisdictional). Rules 32.2(a)(3) and 32.2(a)(5) [] preclude a ground "[w]hich could have been but was not raised at trial [or] on appeal, unless the ground for relief [is jurisdictional]." . . . As noted above, this claim is not jurisdictional, and this ground does not arise out of any newly discovered facts or evidence, and it is apparent that this matter could have been raised at trial or on appeal. Consequently, this ground is subject to the procedural bars discussed above, and those procedural bars mandate a summary dismissal of this ground in the petition.

## Conclusion

Based on the foregoing, this Court is authorized to summarily dismiss the subject Rule 32 petition without an evidentiary hearing.

> WHEREFORE, it is **ORDERED, ADJUDGED,** and **DECREED** that
> the Petition for Relief from Conviction or Sentence heretofore filed by . . .
> Eric Lamar Holifield be, and hereby is, **DISMISSED**.

(*Id.* at 2-9 (all footnotes and some internal citations omitted; emphasis in original)).

Holifield filed written notice of appeal (*see* Doc. 8, Exhibit 10, NOTICE OF APPEAL AND REQUEST TO PROCEED IN FORMA PAUPERIS) and in his appellate brief argued that the trial court abused its discretion in summarily denying his Rule 32 petition without an evidentiary hearing (*see* Doc. 8, Exhibit 11).

The Alabama Court of Criminal Appeals affirmed the trial court's judgment by unpublished memorandum decision issued on August 11, 2017, therein specifically finding that the trial court properly summarily dismissed Holifield's petition because the record supported the trial court's findings. (Doc. 8, Exhibit 14). Petitioner's application for rehearing (Doc. 8, Exhibit 15) was overruled on September 1, 2017 (Doc. 8, Exhibit 16), and his petition for writ of certiorari to the Alabama Supreme Court (Doc. 8, Exhibit 17) was denied on November 9, 2017 (Doc. 8, Exhibit 18), with the certificate of final judgment being entered that same date (Doc. 8, Exhibit 19).

As previously indicated, Holifield filed his petition seeking habeas corpus relief in this Court on January 18, 2018 (Doc. 1, at 13), raising the following issues which he claims entitle him to federal habeas corpus relief: (1) the trial court committed reversible error in refusing his request for a jury instruction on the lesser-included offense of third-degree assault; (2) his trial counsel provided ineffective assistance;[9] (3) his appellate

---

[9] This Court has previously gone into more specific detail regarding the specific claims of ineffective assistance of trial counsel Petitioner raises in his federal petition but it suffices to note, at this point, that these are the same claims Holifield raised in Alabama's state courts through his Rule 32 petition.

counsel provided ineffective assistance;[10] and (4) the trial court was without jurisdiction to render judgment or impose sentence, his convictions being void *ab initio* and repugnant to the United States Constitution because the Alabama Constitution of 1901 was enacted with the sole intent to establish white supremacy and to disenfranchise blacks and poor whites.

Because the respondent argued in her answer that Holifield failed to exhaust his jury instruction claim in state court and, as a consequence, this Court is prohibited by the procedural default doctrine from considering the merits of that claim (*see* Doc. 8), the undersigned explained the procedural default defense to Holifield by order dated April 18, 2018, and extended to him the opportunity to establish cause and prejudice for any procedural defaults or extraordinary circumstances implicating a fundamental miscarriage of justice (*see* Doc. 9). In response to this order, Holifield contends that cause for the default was appellate counsel's failure to fully exhaust this claim to Alabama's highest court (or otherwise to inform Petitioner of his obligation to exhaust this claim) and that he was prejudiced because in *Williams v. State,* 570 So.2d 722 (Ala.Crim.App. 1990), the Alabama Court of Criminal Appeals determined that third-degree assault was a lesser-included offense of rape and sodomy, such that had this claim been fully exhausted, there is a reasonable probability that his appeal would have been different. (Doc. 10, at 6-7). Petitioner also contends that he is actually innocent of rape and sodomy because the acts were consensual (*id.* at 7), such that this Court's failure to consider the merits of this claim will result in a fundamental miscarriage of

---

[10]    Again, the undersigned simply notes that Petitioner raises the same claims of ineffective assistance of appellate counsel that he raised in his Rule 32 petition.

justice (*see id.*).

## CONCLUSIONS OF LAW

### A.   Procedural Default Doctrine.

In *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), the Supreme Court stated that it would "not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Id.* at 729, 111 S.Ct. at 2553-2554. This rule applies whether the state law ground is procedural or substantive. *Id.* at 729, 111 S.Ct. at 2554. The doctrine applies to bar federal habeas review when a state court declines to address a petitioner's federal claims because the petitioner fails to meet a state procedural requirement. *Id.* at 729-730, 111 S.Ct. at 2554; *see also Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (federal courts must honor legitimate state trial and appellate procedural rules when enforced by state courts and must decline to review on the merits claims that the state treats as barred absent a showing of cause for non-compliance with such rules and resulting prejudice); *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir.) ("Pursuant to the doctrine of procedural default, a state prisoner seeking federal habeas corpus relief, who fails to raise his federal constitution[al] claim in state court, or who attempts to raise it in a manner not permitted by state procedural rules is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default."), *cert. denied sub nom. Alderman v. Thomas*, 513 U.S. 1061, 115 S.Ct. 673, 130 L.Ed.2d 606 (1994). "In these cases, the state judgment rests on independent and

adequate state procedural grounds." *Coleman*, 501 U.S. at 730, 111 S.Ct. at 2554 (citations omitted).

The application of the independent and adequate state ground doctrine in the habeas context is grounded in concerns of federalism and comity. *Id.*

> Without the rule, a federal district court would be able to do in habeas what this Court could not do on direct review; habeas would offer state prisoners whose custody was supported by independent and adequate state grounds an end run around the limits of this Court's jurisdiction and a means to undermine the State's interest in enforcing its laws.

*Id.* at 730-731, 111 S.Ct. at 2554.

An additional consideration comes to the fore when the independent and adequate state ground supporting a petitioner's custody is a state procedural default. *Id.* at 731, 111 S.Ct. at 2554. The Supreme Court has long held

> that a state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims. (citations omitted) This exhaustion requirement is also grounded in principles of comity; in a federal system, the States should have the opportunity to address and correct alleged violations of state prisoners' federal rights.
>
> .       .       .
>
> [A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance. A habeas petitioner who has defaulted his federal claims in state court meets the technical requirement for exhaustion; there are no state remedies any longer "available" to him. (citations omitted) In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases.

*Id.* at 731, 732, 111 S.Ct. at 2554-2555, 2555.

In the habeas context, federal courts are to "presume that there is no independent and adequate state ground for a state court decision when the decision 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.'" *Id.* at 735, 111 S.Ct. at 2557 (quoting *Michigan v. Long*, 463 U.S. 1032, 1040-1041, 103 S.Ct. 3469, 3476-3477, 77 L.Ed.2d 1201 (1983)); *see Harris v. Reed*, 489 U.S. 255, 263, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989) ("[A] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar."). In all other cases, the presumption is not applicable. *See Coleman*, 501 U.S. at 739, 111 S.Ct. at 2559. In *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the Supreme Court held that the *Harris v. Reed* presumption is inapplicable to a claim that is never presented to the state courts. *Id.* at 299, 109 S.Ct. at 1069 ("The rule announced in *Harris v. Reed* assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding."). Moreover, the presumption "looks through" unexplained orders to the last reasoned decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 804, 111 S.Ct. 2590, 2595, 115 L.Ed.2d 706 (1991).

> Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground. If an earlier opinion "fairly appear[s] to rest primarily upon federal law," *Coleman*,[__ U.S., at __, 111 S.Ct., at 2559], we will presume that no procedural default has been invoked by a subsequent unexplained order that leaves the judgment or its consequences in place. Similarly, where . . . the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a

later decision rejecting the claim did not silently disregard that bar and consider the merits.

501 U.S. at 803, 111 S.Ct. at 2594. Also, the presumption may not be applied in cases in which the state court opinion did not, at a minimum, discuss the federal grounds at issue. *Tower v. Phillips*, 7 F.3d 206, 211 (11th Cir. 1993) ("*Coleman* and *Ylst* lead us to conclude that we may not assume that had the state court issued an opinion, it would have ignored its own procedural rules and reached the merits of this case. In fact, the most reasonable assumption is that had the state court ruled, it would have enforced the procedural bar."). Finally, "where a state court has ruled in the alternative, addressing both the independent state procedural ground and the merits of the federal claim, the federal court should apply the state procedural bar and decline to reach the merits of the claim." *Alderman v. Zant, supra*, 22 F.3d at 1549.

When a petitioner has procedurally defaulted a claim, a federal court is barred from reaching the merits of that claim unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman, supra*, 501 U.S. at 750, 111 S.Ct. at 2565. The cause and prejudice standard applies "uniformly to all independent and adequate state procedural defaults." *Id.* at 750-751, 111 S.Ct. at 2565.

> In procedural default cases, the cause standard requires the petitioner to show that some objective factor external to the defense impeded counsel's efforts to raise the claim in state court. Objective factors that constitute cause include interference by officials that makes compliance with the state's procedural rule impracticable, and a showing that the factual or legal basis for a claim was not reasonably available to counsel. In addition, constitutionally [i]neffective assistance of counsel is cause. Attorney error short of ineffective assistance of counsel, however,

22

does not constitute cause and will not excuse a procedural default. Once the petitioner has established cause, he must show actual prejudice resulting from the errors of which he complains.

Federal courts retain the authority to issue the writ of habeas corpus in a further, narrow class of cases despite a petitioner's failure to show cause for a procedural default. These are extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime. We have described this class of cases as implicating a fundamental miscarriage of justice.

*McCleskey v. Zant*, 499 U.S. 467, 493-494, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991) (internal quotation marks and citations omitted).

In her answer, Respondent asserts that Petitioner's jury instruction claim is procedurally defaulted under *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) due to Holifield's failure to "fairly present" this claim throughout "one complete round of the State's established appellate review process[,]" *id.* at 845, 119 S.Ct. at 1732. (*See* Doc. 8, at 5-6). Here, Petitioner frankly admits that this claim has been defaulted. (Doc. 10, at 5). Even if this Court agreed with Holifield that he has established cause for his procedural default of this claim, namely his appellate counsel's failure to petition the Alabama Supreme Court for certiorari review or otherwise to advise him of the decision of the Alabama Court of Criminal Appeals and the denial of rehearing so that he could have sought certiorari review (*see id.* at 6), he cannot establish prejudice for his default of this claim for the simple fact that it lacks any merit, as determined by the Alabama Court of Criminal Appeals in its unpublished memorandum decision.

Holifield stakes the position that he was prejudiced by his appellate counsel's failure to fully exhaust his jury instruction claim to the Alabama Supreme Court because

in *Williamson v. State,* 570 So.2d 722 (1990) the Alabama Court of Criminal Appeals held that third-degree assault is a lesser-included offense of rape and sodomy. (Doc. 10, at 7.) However, this was not the precise holding in *Williamson, supra*; instead, the Alabama Court of Criminal Appeals held that in light of the particular circumstances and facts in the case, the jury should have been charged on third-degree as a lesser-included offense of attempted rape. 570 So.2d at 724.[11] In so holding, the court stressed that such a charge is appropriate only if the lesser-included offense "'is established by proof of the same or fewer than all the facts required to establish the commission of the offense charged[.]'" *Id.* (citation omitted). Consistent with *Williamson,* the trial court and the Alabama Court of Criminal Appeals held that the decision of whether third-degree assault is a lesser-included offense of first-degree sodomy[12] is made on a case-by-case basis and, in this case, a third-degree assault charge was not warranted because Holifield admitted he had sexual intercourse with Nathan and, therefore, either he was guilty of sodomy or guilty of nothing. (Doc. 8, Exhibit 5, at 7-9 (citing *Powell v. State,* 644 So.2d 1279 (Ala.Crim.App. 1994) and holding, consistent with that case, that where a defendant admits that he has had sexual intercourse with the victim, a lesser-included offense instruction is not necessary because the defendant is either guilty of the offense or guilty of nothing)). Accordingly, Petitioner's argument

---

[11]    In other words, *Williamson* simply does not stand for the proposition that in all cases of first-degree rape and sodomy, regardless of facts and circumstances, third-degree assault will necessarily be a lesser-included offense about which the jury must be charged.

[12]    As the Alabama Court of Criminal Appeals noted, this was Holifield's sole claim on appeal. (Doc. 8, Exhibit 5, at 6 n.6).

has no merit and, thus, he cannot establish that he was prejudiced by his appellate attorney's failure to exhaust this claim in the Alabama Supreme Court.[13]

## B. Merits Review of Ineffective Assistance of Trial Counsel and Appellate Counsel Claims Raised by Holifield, as well as the Claim that the Trial Court Lacked Jurisdiction.

In accordance with the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petitioner is entitled to habeas corpus relief "on any claim adjudicated on the merits in state court if that adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,]" *Cox v. McNeil,* 638 F.3d 1356, 1360 (11th Cir.) (citing 28 U.S.C. § 2254(d)(1)), *cert. denied sub nom. Cox v. Tucker,* 565 U.S. 906, 132 S.Ct. 309, 181 L.Ed.2d 189 (2011), or "'was based on an unreasonable determination of

---

[13] The fundamental miscarriage of justice/actual innocence exception does not apply in this case because Petitioner has not satisfied the standard set forth in *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). That standard requires Holifield to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* at 496, 106 S.Ct. at 2649-2650. To be credible, a claim of actual innocence "requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Schlup v. Delo,* 513 U.S. 298, 324, 115 S.Ct. 851, 865, 130 L.Ed.2d 808 (1995); *see also id.* at 327, 115 S.Ct. at 867 ("To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."). "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998) (citation omitted). Holifield simply has not come forward with any new reliable evidence that establishes his actual factual innocence of the rape, sodomy and kidnapping of Ashley Nathan for which he was convicted on February 24, 2015. Indeed, Holifield only makes the conclusory "argument" that he is innocent of rape and sodomy because the acts were consensual; however, this was Petitioner's defense at trial and the jury clearly rejected his defense (and believed the victim's testimony) in returning guilty verdicts. Accordingly, this case is not one of those rare cases in which the actual innocence exception is applicable.

the facts in light of the evidence presented in the State court proceeding.'" *Mansfield v. Secretary, Dep't of Corrections,* 679 F.3d 1301, 1306 (11th Cir. 2012) (quoting 28 U.S.C. § 2254(d)(2)), *cert. denied,* 568 U.S. 1098, 133 S.Ct. 861, 184 L.Ed.2d 675 (2013); *see also Jones v. Secretary, Dep't of Corrections,* 644 F.3d 1206, 1209 (11th Cir.) ("[U]nder AEDPA, a federal court may not grant habeas relief on a claim that has been considered and rejected by a state court unless it is shown that the state court's decision was 'contrary to' federal law then clearly established in the holdings of the United States Supreme Court, 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000); or that it 'involved an unreasonable application' of such law, § 2254(d)(1); or that it was 'based on an unreasonable determination of the facts' in the light of the record before the court, § 2254(d)(2)."[14]), *cert. denied sub nom. Jones v. Tucker,* 565 U.S. 1041, 132 S.Ct. 590, 181 L.Ed.2d 433 (2011).

> "A state court decision is contrary to clearly established
> federal law if it applies a rule that contradicts the governing law set

---

[14]     As amended,  § 2254 now provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

        (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

        (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) & (2).

forth in Supreme Court cases or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to the Court's." *Windom v. Sec'y, Dep't of Corr.,* 578 F.3d 1227, 1247 (11th Cir. 2009) . . . . A state court decision involves an unreasonable application of federal law when "it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case. An unreasonable application may also occur if a state court unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putnam v. Head,* 268 F.3d 1223, 1241 (11th Cir. 2001) . . . . The statutory phrase "clearly established Federal law" "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

*Spencer v. Secretary, Dep't of Corrections,* 609 F.3d 1170, 1177-1178 (11th Cir. 2010), *cert. denied,* 562 U.S. 1203, 131 S.Ct. 1049, 178 L.Ed.2d 869 (2011); *see also Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000) ("Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by th[e Supreme] Court on a question of law or if the state court decides a case differently than th[e Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.").

As to findings of fact reviewed under 28 U.S.C. § 2254(d)(2), a federal court determines whether the state court's finding "'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Callahan v. Campbell,* 427 F.3d 897, 926 (11th Cir. 2005) (quoting § 2254(d)(2)), *cert. denied sub nom. Callahan v. Allen,* 549 U.S. 952, 127 S.Ct. 427, 166

L.Ed.2d 269 (2006). "Not only must the factual determination have been unreasonable, but the state court's factual finding must be shown unreasonable by clear and convincing evidence." *Id.*, citing § 2254(e)(1); *see also Miller-El v. Cockrell,* 537 U.S. 322, 339, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)[.]").

> When evaluating whether a state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" under § 2254(d)(2), "[w]e may not characterize . . . state-court factual determinations as unreasonable 'merely because [we] would have reached a different conclusion in the first instance.'" *Brumfield v. Cain,* 576 U.S. ___, ___, 135 S.Ct. 2269, 2277, 192 L.Ed.2d 356 (2015). . . . Section 2254(d)(2), like § 2254(d)(1), requires that federal courts afford court factual determinations "substantial deference." *Id.* If "[r]easonable minds reviewing the record might disagree about" the state court factfindng in question, "on habeas review that does not suffice to supersede" the state court's factual determination. *Rice v. Collins,* 546 U.S. 333, 341-42, 126 S.Ct. 969, 976, 163 L.Ed.2d 824 (2006). We also presume findings of fact made by state courts are correct, unless a petitioner rebuts that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

*Daniel v. Commissioner, Alabama Dep't of Corrections,* 822 F.3d 1248, 1259 (11th Cir. 2016).

Turning to the case at hand, Holifield only contends that the state courts' decisions respecting his final claim of ineffective assistance of trial counsel were "contrary to" clearly established Federal law, as determined by the Supreme Court of the United States, § 2254(d)(1) (*see* Doc. 10, at 12), but does not otherwise argue that

the state courts' decisions respecting all other ineffective assistance of trial and appellate counsel claims (or the "jurisdictional" claim) were "contrary to" or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States, § 2254(d)(1), or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding, § 2254(d)(2) (*see* Doc. 10, at 9-11 & 12-16).

      **1.**    **<u>Ineffective Assistance of Trial and Appellate Counsel Claims</u>.** With respect to the ineffective assistance of trial and appellate counsel claims identified above, the appropriate "inquiry turns upon whether the state decision was contrary to or an unreasonable application of *Strickland*." *See, e.g., Means, supra,* 433 Fed.Appx. at 855 (citing *Woodford v. Visciotti,* 537 U.S. 19, 22, 24-25, 123 S.Ct. 357, 358-360, 154 L.Ed.2d 279 (2002)).[15]

> First, under § 2254(d)(1)'s "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of facts materially indistinguishable facts."

> Next, under the "unreasonable application" clause, a federal habeas court may "grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts" of the case. "In other words, a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" Importantly, for a federal habeas court to find a state court's application of Supreme Court precedent "unreasonable," it is not enough that the state court's

---

[15]     In other words, "[i]t is beyond question that, in addressing the relevant claim, we are dealing with an area of 'clearly established Federal law [under *Strickland*].'" *Frazier, infra,* 661 F.3d at 527 n.12 (citation omitted).

adjudication be "incorrect or erroneous"; that application must have been "objectively unreasonable."

*Frazier v. Bouchard,* 661 F.3d 519, 530-531 (11th Cir. 2011) (internal citations and brackets omitted), *cert. denied sub nom. Frazier v. Thomas,* 568 U.S. 833, 133 S.Ct. 410, 184 L.Ed.2d 58 (2012); *see also Pair v. Cummins,* 373 Fed.Appx. 979, 981 (11th Cir. Apr. 20, 2010) ("Under the 'unreasonable application' prong of § 2254(d)(1), the habeas petitioner bears the burden 'to show that the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner.' 'The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether, that determination was unreasonable—a substantially higher threshold.'" (internal citations omitted)). The foregoing makes clear that "'[i]n addition to the deference to counsel's performance mandated by *Strickland*, the AEDPA adds another layer of deference—this one to a state court's decision—when we are considering whether to grant federal habeas relief from a state court's decision.'" *Means, supra,* 433 Fed.Appx. at 855 (citation omitted).

To prevail on an ineffective assistance of counsel claim, a petitioner/defendant is required to show (1) that his attorney's representation fell below "an objective standard of reasonableness" and (2) that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *see also Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) ("The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice'

prong of a *Strickland* claim, and both prongs must be proved to prevail."), *cert. denied sub nom. Johnson v. Nagle*, 535 U.S. 926, 122 S.Ct. 1295, 152 L.Ed.2d 208 (2002).[16]

> The performance prong of the ineffective assistance standard entails a deferential review of counsel's conduct. In assessing the reasonableness of counsel's performance, courts must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Thus, the Sixth Amendment does not require criminal defense attorneys to take a nothing to lose approach and raise every conceivable nonfrivolous defense.

> With respect to prejudice, courts ask whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. In the context of a claim that counsel was ineffective on appeal, the court must first perform a review of the merits of the omitted or poorly presented claim. The defendant carries his burden of establishing prejudice if the court finds that the neglected claim would have had a reasonable probability of success on appeal.

*Means, supra,* 433 Fed.Appx. at 855-856 (internal quotation marks and citations omitted); *see also Pair, supra,* 373 Fed.Appx. at 981-982 & 982 ("The performance prong of an ineffective assistance claim requires the petitioner to show that, considering all the circumstances, his attorney's representation fell below an objective standard of reasonableness. The standard is that of a reasonable attorney, not a paragon of the bar

---

[16]     Given the two-prong nature of the test for adjudicating ineffective-assistance-of-counsel claims, it can come as no surprise that "'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" *Johnson, supra,* 256 F.3d at 1176 (citation omitted). When applying the *Strickland* standard, it is clear that courts "are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 1998) (citation omitted), *cert. denied sub nom. Oats v. Moore*, 527 U.S. 1008, 119 S.Ct. 2347, 144 L.Ed.2d 243 (1999); *see also Adamson v. United States,* 288 Fed.Appx. 591, 594 (11th Cir. Jul. 29, 2008) ("The defendant must satisfy both prongs of this test to show a Sixth Amendment violation; if the defendant fails to demonstrate one of these prongs sufficiently, we do not need to address the other."), *cert. denied,* 555 U.S. 1010, 129 S.Ct. 526, 172 L.Ed.2d 385 (2008); *Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004) ("[O]nce a court decides that one of the requisite showings has not been made it need not decide whether the other one has been.").

or an Aristotle or a Clarence Darrow. Moreover, judicial review of an attorney's performance is highly deferential, and the court must eliminate the distorting effects of hindsight and evaluate performance from the attorney's perspective at the time the challenged conduct occurred. In so doing, the court must indulge a strong presumption that the attorney's conduct was objectively reasonable. A petitioner fails to overcome that presumption if the challenged conduct might be considered sound trial strategy. . . . Pair must [also] establish prejudice. It is not enough for him to show that his counsel's deficient performance had some conceivable effect on the jury's verdict. Instead, Pair must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (internal quotation marks and citations omitted)).

As explained in more detail below, all of Holifield's claims of ineffective assistance of trial and appellate counsel fail. Before looking at each individual claim, the undersigned would simply note that this is not a § 2254(d)(2) case because Petitioner nowhere (*see* Docs. 1 & 10) shows by clear and convincing evidence that any of the state courts' factual findings were unreasonable. *See, e.g., Duran v. Walker,* 223 Fed.Appx. 865, 871 (11th Cir. Mar. 29, 2007) ("[A] state court's factual findings are presumed correct, and the petitioner can rebut them only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). As such, for a state court's adjudication to result in an unreasonable determination of the facts in light of the evidence presented, '[n]ot only must the factual determination have been unreasonable, but the state court's factual findings must be shown unreasonable by clear and convincing evidence.'

32

*Callahan v. Campbell,* 427 F.3d 897, 926 (11th Cir. 2005), *cert. denied*, 549 U.S. 952, 127 S.Ct. 427, 166 L.Ed.2d 269 (2006).")", *cert. denied,* 552 U.S. 874, 128 S.Ct. 179, 169 L.Ed.2d 122 (2007). Accordingly, the undersigned considers solely whether the merits decisions of the Mobile County Circuit Court and the Alabama Court of Criminal Appeals are contrary to, or an unreasonable application of, *Strickland v. Washington* under § 2254(d)(1), which requires the undersigned to briefly discuss each claim of ineffective assistance of trial and appellate counsel raised by Holifield in turn.

      **a.**     **<u>Trial Counsel's Identification of a Deaf Juror to the Trial Court,</u> <u>Prompting the Trial Court to Strike the Juror for Cause.</u>**   Holifield contends that his trial attorney should not have identified a deaf juror as someone who should be stricken for cause and, instead, should have objected to the trial court striking this juror for cause. Petitioner urges this Court to grant relief on this claim based upon the conclusory argument that in absence of the trial court or his defense attorney questioning the juror to establish his inability to hear, the juror should not have been stricken for cause. (*See* Doc. 10, at 10.) The problem with Petitioner's argument in this regard is that the record in this case clearly establishes that Juror Robert Jones had hearing difficulties (Doc. 8, Exhibit 2, T.T. 36 ("I retired early from Ingalls Shipbuilding because of my hearing problem."); *compare id. with* T.T. 75 (upon questioning by defense counsel, Jones commented that he could hear Honeycutt "better than [he] could hear the other guy[]" and that his hearing would be a problem when he had to put a new battery in his hearing aid)) and, as a result, this Court (as was the case with the Alabama courts) is in no position to find that defense counsel was in any manner deficient in bringing this juror's hearing problems to the court's attention (Doc. 8, Exhibit 2, T.T. 78) and not

objecting to the court striking the juror for cause. In other words, Petitioner has not and cannot establish that no other attorney in the shoes of Petitioner's trial attorney would have acted as did defense counsel in this case in bringing this juror to the trial court's attention and then not objecting to the trial court striking the juror for cause. Accordingly, the undersigned concludes that the Alabama courts' determinations that the *Strickland v. Washington* test had not been met in this regard is not contrary to, or an unreasonable application of, *Strickland v. Washington.* In other words, trial counsel was not deficient in this regard and, as a result, Holifield was not prejudiced.

      **b.**    **His Trial Attorney Failed to Challenge a Potential Juror for Cause.** In this regard, Petitioner contends that his trial attorney should have moved to strike Kristen Jordan Jones for cause, in accordance with Ala.Code § 12-16-150(4) ("It is good ground for challenge of a juror by either party . . . [t]hat he is connected by consanguinity within the ninth degree, or by affinity within the fifth degree, computed according to the rules of the civil law, either with the defendant or with the prosecutor or the person alleged to be injured."), on the basis that she was a relative of the Mobile County District Attorney, Ashley Rich, instead of using a preemptory challenge to strike this potential juror from the petit jury. Holifield argues that the plain language of the Alabama statute means what it says and that the Alabama courts were wrong in finding that Jones could not have been challenged for cause. (Doc. 10, at 10-11 (citing *Ex parte Waddail,* 827 So.2d 789 (Ala. 2001)). However, Petitioner's reliance on an Alabama civil case interpreting another section of the Alabama Code, specifically § 6-5-548(b), does nothing to establish that the Alabama courts misinterpreted § 12-16-150(4) in finding that his trial attorney could not challenge Jones for cause under the statute and,

therefore, was in no manner deficient under *Strickland v. Washington*. Beyond that,

Holifield has made no suggestion, much less established, how the result of his trial

would have been different had Jones been struck for cause instead of through use of a

preemptory challenge. Because Petitioner's argument is this regard is conclusory and

specious, the Alabama courts' determinations that the *Strickland v. Washington* test

was not met is neither contrary to, nor an unreasonable application of, *Strickland v.*

*Washington*.

          **c.**     **The Failure of Trial Counsel to Move for a Mistrial Due to**

**Alleged Private Contact Between the Prosecutor and a Potential Juror.** Holifield

contends that his trial attorney provided ineffective assistance in failing to move for a

mistrial due to purported private contact between the prosecutor and a potential juror,

Kristen Jones. This claim is based on record evidence reflecting that the prosecutor

informed the trial court that petit juror Jones was purportedly related to the District

Attorney. (*See* Doc. 8, Exhibit 2, T.T. 79 ("MR. TURNER: Judge, for the record, No. 9,

Kristen Jordan Jones, is a relative of Ashley Long in our office. I wanted to let him know

that.")). Petitioner now contends that he was entitled to a hearing on this claim "because

the record is unclear as to the extent of the communication and the influence it may

have had on other potential jurors[.]" (Doc. 10, at 11). This conclusory

contention/assertion by Holifield, however, ignores the trial court's astute observation

that defense counsel would have had to "divine" that the prosecutor had private

contact/communications with Jones based solely upon the prosecutor's comments in

open court. Because it is readily apparent that no reasonable defense attorney would

have divined or intuited from the prosecutor's statement in open court that he must have

had some private communication with Jones, the Alabama courts' implicit

determinations that the cause prong of the *Strickland v. Washington* standard was not

established in this regard is neither contrary to, nor an unreasonable application, of

*Strickland v. Washington*.

       **d.**      **The Failure of Trial Counsel to Object to the Trial Court's Purported**

**Failure to Charge the Jury that their Verdicts Must be Independent as to Each**

**Individual Charge.**  Holifield calls into question the failure of his trial attorney to object

to the trial court's purported failure to charge the jury that their verdicts must be

independent as to each individual charge. Petitioner now argues that the state courts'

adjudications of this claim were contrary to clearly established law, namely *In re*

*Winship,* 397 U.S. 358, 364 (1970), given that the record does not support those courts'

determinations that the record refutes this claim of ineffective assistance of counsel.

(*See* Doc. 10, at 12.) There can be little question but that the Supreme Court held in *In*

*re Winship, supra,* that "the Due Process Clause protects the accused against

conviction except upon proof beyond a reasonable doubt of every fact necessary to

constitute the crime with which he is charged." 397 U.S. at 364, 90 S.Ct. at 1073.

Consistent with *In re Winship,* and as noted by the Alabama courts who reviewed

Holifield's Rule 32 petition, the trial court charged the jury regarding each of the

elements of the crimes for which Holifield was accused (that is, first-degree rape, first-

degree sodomy, and first-degree kidnapping, as well as the lesser-included offense of

second-degree kidnapping) and, as well, on each occasion instructed the jury that it

could not convict Holifield of any of those charged crimes unless the State proved

beyond a reasonable doubt all of the elements of each offense. (Doc. 8, Exhibit 2, T.T.

418-26 & 436-37)[17]. Because the trial court's instructions to the jury complied with *In re Winship, supra,* there was obviously nothing for trial counsel to object to in this regard; therefore, the adjudication of this claim of alleged ineffective assistance of counsel by the Mobile County Circuit Court and the Alabama Court of Criminal Appeals certainly is not contrary to (nor is it an unreasonable application of) *Strickland v. Washington*, as viewed through the lens of *In re Winship* (or any lens).

**e.** **Appellate Counsel's Failure to Challenge on Appeal Four Specific Rulings by the Trial Court.** Petitioner contends that his appellate attorney provided ineffective assistance because he failed to raise on appeal the following issues: (1) the trial court allowing, over objection, the arresting officer to testify about a prejudicial statement made by Holifield during the arrest; (2) the trial court granting, over objection, the State's motion precluding evidence of the victim's prior sexual history; (3) the trial court's refusal to allow Holifield to recall witnesses; and (4) the trial court allowing, over objection, the SANE nurse to testify as an expert. (*Compare* Doc. 1, at 26-28 *with* Doc. 10, at 12-13.) The Alabama courts implicitly determined that Petitioner had established neither prong of the *Strickland v. Washington* standard, noting Holifield's conclusory assertion of prejudice and also observing that appellate counsel had no obligation to raise every non-frivolous issue and that the winnowing out of weaker arguments was sound strategy. Before this Court, Holifield continues to make the wholly conclusory

---

[17]     In addition, as the Alabama courts noted in their decisions, the trial court made clear in its instructions concerning the verdict forms that the jury was to consider each offense separately (*see id.* at 426-27) and it is clear that the jury did consider each offense separately inasmuch as the jury convicted Petitioner of the lesser-included offense of second-degree kidnapping as opposed to first-degree kidnapping (*see id.* at 439).

arguments that the foregoing claims are meritorious (Doc. 10, at 12) and that he was prejudiced by appellate counsel's failure to raise these issues on direct appeal (*id.* at 13 ("Petitioner contends had counsel raised the issues on direct appeal, there's a reasonable probability that the results of Holifield's direct appeal would have been different.")). As noted by the Alabama courts, however, Petitioner at no time has alleged that the trial court abused its discretion in any of the four instances set forth above, much less cited to any case law establishing an abuse of discretion, and certainly "has offered no facts from which to conclude there is a substantial likelihood that the appellate court would [have] rule[d] differently" than the trial court. (Doc. 8, Exhibit 10, ORDER, at 5.) And because Petitioner has not established (or attempted to establish) that the result of his appeal would have been different had appellate counsel attacked these evidentiary rulings, the adjudication of this issue by the Mobile County Circuit Court and the Alabama Court of Criminal Appeals is neither contrary to, nor an unreasonable application of, *Strickland v. Washington*.

It is clear, therefore, that Holifield has not established his entitlement to relief under § 2254(d)(1) with respect to any claims of ineffective assistance of counsel raised in the instant petition.

2.     **Holifield's Claim that the Trial Court Lacked Jurisdiction to Support his Convictions (and Sentences) Because the Alabama Constitution of 1901 was Enacted with Discriminatory Intent such that the Alabama Criminal Code is Null and Void**.     Petitioner argues that the trial court was without jurisdiction to render judgment pursuant to the sections of the criminal code under which he was indicted, these statutes being null and void because they were enacted in accordance with the

Alabama Constitution of 1901, which had as its sole purpose the racially discriminatory intent to establish white supremacy and the disenfranchisement of blacks and poor whites. (*Compare* Doc. 1, at 28-34 *with* Doc. 10, at 14-16.) In making this argument, Petitioner relies primarily on *Hunter v. Underwood,* 471 U.S. 222, 105 S.Ct. 1916, 85 L.Ed.2d 222 (1985), a civil case in which the United States Supreme Court held § 182 of the Alabama Constitution of 1901 (which provided, in part, for the disenfranchisement of persons convicted of, among other offenses, crimes of moral turpitude) violative of the Equal Protection Clause of the Fourteenth Amendment under *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). *See* 471 U.S. at 227-233, 105 S.Ct. at 1920-23. As noted by the Alabama courts who reviewed Petitioner's argument, the Supreme Court in *Hunter* did not strike down the entire 1901 Alabama Constitution (*see, e.g.,* Doc. 8, Exhibit 10, ORDER, at 7) and since Petitioner has not cited to a specific section of the Alabama Constitution he claims to be infirmed, he would necessarily have to establish (if the foregoing cases have any application to this case) that racial discrimination was a substantial or motivating factor in the adoption of Alabama's statutes criminalizing rape, sodomy and kidnapping. *Compare Hunter, supra,* 471 U.S. at 225, 105 S.Ct. at 1918 ("'To establish a violation of the fourteenth amendment in the face of mixed motives, plaintiffs must prove by a preponderance of the evidence that racial discrimination was a substantial or motivating factor in the adoption of section 182.'") *with Arlington Heights, supra,* 429 U.S. at 270, 97 S.Ct. at 566 (finding that the respondents failed to carry their burden of proving that discriminatory purpose was a motivating factor in the Village's decision denying a rezoning request).

Holifield has not cited to any federal decision, much less a Supreme Court case, which stands for the proposition that a State's criminal statutes are subject to the analysis set forth in *Hunter* and *Arlington Heights, supra,* but even if those cases are arguably applicable, Petitioner has not even established that there were any mixed motives in the enactment of the statutes criminalizing rape, sodomy and kidnapping in Alabama, much less that racial discrimination was a substantial or motivating factor in the adoption of these statutes. (*Compare* Doc. 1, at 28-34 *with* Doc. 10, at 14-16). In addition, Petitioner nowhere takes issue with the adjudication of this claim by the Mobile County Circuit Court and the Alabama Court of Criminal Appeals (*see id.*); therefore, this Court is unable to find that the adjudication of this claim by the aforementioned Alabama courts is contrary to, or an unreasonable application of, *Hunter* and *Arlington Heights.* Accordingly, the undersigned finds that Petitioner's is not entitled to habeas relief based on this conclusory and spurious claim.

**C.** **Certificate of Appealability.** Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2254, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2). The instant habeas petition is being denied partly on procedural grounds without reaching the

merits of a purported constitutional claim, such that "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling[,]" *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000), but also primarily on the merits of underlying constitutional claims, such that a COA should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[,]" *Slack v. McDaniel, supra,*; *see also id.* at 483–484, 120 S.Ct. at 1603-1604 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"); *see Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether  (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'"). With respect to the identified ineffective assistance of trial and appellate counsel claims discussed above, as well as the jurisdictional claim, the undersigned recommends that the Court find that reasonable jurists could not debate whether his § 2254 habeas petition should be resolved in a different manner or that any of the remaining issues presented are adequate to deserve

41

encouragement to proceed further. With respect to his jury instruction claim, Petitioner has defaulted this claim without fairly presenting (and exhausting) it to the Alabama Supreme Court and that court would now find the claim procedurally barred, *compare McNair, supra,* 416 F.3d at 1302 & 1305 *with Kelley, supra,* 377 F.3d at 1344 & 1351; thus, a reasonable jurist could not conclude either that this Court is in error in dismissing the instant petition or that Holifield should be allowed to proceed further, *Slack, supra,* 529 U.S. at 484, 120 S.Ct. at 1604 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."). Accordingly, petitioner is not entitled to a certificate of appealability as to any of the claims he has raised in his habeas corpus petition.

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.  *Brightwell v. Patterson,* CA 11-0165-WS-C, Doc. 14 (Eleventh Circuit order denying petitioner's motions for a COA and to appeal IFP in a case in which this Court set out the foregoing procedure); *see also Castrejon v. United States,* 2011 WL 3241817, *20 (S.D. Ala. June 28, 2011) (providing for the same procedure), *report and recommendation adopted,* 2011 WL 3241580 (S.D. Ala. July 29, 2011); *Griffin v. DeRosa*, 2010 WL 3943702, at *4 (N.D. Fla. Sept. 20, 2010) (providing for same

procedure), *report and recommendation adopted sub nom. Griffin v. Butterworth,* 2010 WL 3943699 (N.D.Fla. Oct. 5, 2010).

## CONCLUSION

The Magistrate Judge is of the opinion that Eric Lamar Holifield's rights were not violated in this cause and that his request for federal habeas corpus relief, pursuant to 28 U.S.C. § 2254 (Doc. 1), should be **DENIED**. Petitioner is not entitled to a certificate of appealability and, therefore, he is not entitled to appeal *in forma pauperis*.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely

incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 15th day of June, 2018.

s/P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**